UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 20-mj-06469-HUNT

UNITED STATES OF AMERICA,

vs.

JONATHAN MARKOVICH et al.,

Defendants.

_____/

## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

The United States of America hereby opposes Defendants' Motion to Compel. [D.E. 53] ("Motion"). This is a second motion asking the Government to identify its confidential witnesses. Daniel Markovich brought the first motion to compel [D.E. 43], and sought, among other things, the identities of confidential witnesses corresponding to the criminal complaint affidavit. Now, in the present Motion, seven Defendants[1] object to the Government's redactions in Jencks material provided to Defendants on October 16, 2020, and request "properly" redacted Jencks material. Defendants first object to the relabeling in interview reports of the names of the confidential witnesses and individuals to correspond to their anonymous label (e.g., "CW 1") in the affidavit in support of the criminal complaint. [D.E. 1]. Defendants' Motion ignores the fact that the Government is not required to disclose the identities of its confidential witnesses at this stage of the case—i.e., before a preliminary hearing.

Defendants also object—without any explanation as to why this information is relevant to the preliminary hearing—to the Government's redaction of the names of other treatment centers

---

[1] The seven Defendants who brought this Motion are: Jonathan Markovich; Richard Waserstein; Daniel Markovich; Jose Santeiro; Drew Lieberman; Christopher Garnto; and Frank Bosch.

or individuals not known to be related to Compass Detox/WAR.  Since these redactions do not relate to the subject matter of the testimony at the upcoming preliminary hearing, i.e., the probable cause supporting the charges filed against each Defendant, Defendants are not entitled to this information under Fed. R. Crim. P. 26.2(a).  Thus, Defendant's Motion should be denied.

Finally, the Government has provided this Court via e-mail earlier today with the unredacted Jencks production, and the redacted production sent to counsel for the Defendants, so that this Court can conduct an in camera review.  The Government submits that after this review, the Court should deny Defendants' Motion in its entirety, as the redactions are completely proper.

## **FACTUAL BACKGROUND**

Defendants were charged by criminal complaint on September 25, 2020 [D.E. 1], and had their initial appearances on September 28, 30, and October 2, 2020.  Defendants were charged with some or all of the following offenses:  conspiracy to commit health care fraud and wire fraud; health care fraud; conspiracy to pay/receive kickbacks in violation of EKRA; conspiracy to commit money laundering; and PPP fraud.  These charges were based on their respective roles at Second Chance Detox, LLC ("Compass Detox"), and War Network, LLC ("WAR").  This criminal conduct is largely alleged to have gone on since 2017 to the present.

The United States produced the bulk of Special Agent Alberto Bhoge's Jencks material to Defendants on Friday evening, October 16, 2020, approximately 12 days in advance of the

preliminary hearing.[2] This production consisted of interview reports or 302s written by SA Bhoge in connection with the investigation of this case.[3]

In order to provide defense counsel with as much context as possible, individuals and entities identified anonymously in the criminal complaint affidavit were relabeled using the same nomenclature in these 302s (i.e., the individual identified as CW 1 in the complaint affidavit was not simply redacted from the 302, but was instead identified as CW 1 in the 302 as well). Additionally, the names of individuals and entities unrelated to Compass Detox and WAR, which may be involved in ongoing investigations, were redacted.  Finally, the names of patients whose identity must be protected under existing Title 42 Orders, to which Defendants do not object, were also redacted, as was PII and law-enforcement sensitive information, which Defendants similarly do not ask to be unredacted.

The Government informed defense counsel (counsel for Richard Waserstein) on October 15 that any Jencks material it produced would be redacted; defense counsel indicated that he thought any redactions of Jencks material were not allowed, and asked the Government for its legal basis for redactions.  In response to counsel's request for authority for these redactions, the

---

[2] Under SDFL Local Rule 88.10(o)(1), discovery "which is to be made" in connection with a preliminary hearing must be produced 48 hours before the hearing.  The Government thus made the majority of its Jencks production approximately ten days earlier than required.  Moreover, the Government made its Jencks production absent any formal motion for such material by defense counsel, which, as Defendants' own Motion notes [D.E. 53 at 2], is required under the Jencks Act, 18 U.S.C. § 3500.

[3] The Government has made two subsequent Jencks productions (on October 20 and 22) consisting of an additional 302 report recently authored by SA Bhoge and affidavits pertaining to search warrants that were recently unsealed, including the affidavits supporting the two cell phone search warrants and the bank account seizure warrants signed by this Court.  The Government is seeking leave to produce additional sealed affidavits where SA Bhoge was the affiant, and will produce them once these motions are granted by the Magistrate Judges who signed the associated warrants and orders. These affidavits sworn to by FBI SA Bhoge largely mirror his affidavit supporting the criminal complaint (albeit they are less detailed because they are done earlier in the investigation and do not require the same level of description as the charging document in this case).  In short, Defendants have the key portions of SA Bhoge's Jencks material and preliminary hearing testimony already.

Government cited Judge Reinhart's very recent decision in United States v. Michael Ligotti, Case No. 20-mj-08265-REINHART [D.E. 21-23], where the same types of redactions were upheld in their entirety in another addiction treatment fraud case, following a defense motion to compel and the submission of 302s in camera prior to a preliminary hearing in a case charged by complaint. Defense counsel indicated his familiarity with this case but noted that he disagreed, and added that if the Government redacted the Jencks material, Defendants objected and wanted the materials provided to this Court [i.e., for an in camera review], under the same process followed in Ligotti.

The Government produced the redacted Jencks material on October 16, along with a transmittal e-mail describing what kinds of material were redacted/relabeled and why, so Defendants could have an opportunity to object.  After the Government produced the redacted Jencks material on October 16, the parties (the Government and counsel for Richard Wasserstein) were in contact to see if any compromise was possible.  The Government asked defense counsel to point to any specific redactions in any 302s that they believed went too far, noting that such examples could be discussed.  Counsel's response was that the redactions made all of the interview memoranda indecipherable; thus, essentially stating that all the redactions were objectionable to the defense.  However, Defendants' current Motion does not suggest that the interview memoranda are somehow "indecipherable," and their Motion now notes that they do not object to the redactions of patients' names subject to Title 42 Orders, and confidentiality concerns in an addiction treatment case[4] or to the redaction of PII and law-enforcement sensitive information, so it seems some redactions were in fact later deemed "proper" by Defendants. And the Government appreciates

---

[4] And these patients' names were redacted in a manner to clearly reflect that the redaction referred to a "patient," thus making the interview memoranda as decipherable as possible despite the redaction. For example, where the Complaint affidavit referred to a patient as "Patient 6," the Government did not simply redact that patient's name in the interview memoranda or call them "patient," but instead relabeled them as "Patient 6."  Patients not referenced in the Complaint affidavit are labeled Patient A, B, C, etc.

Defendants' willingness to limit their objections from their original position.  In any case, defense counsel indicated on October 19, 2020, that they would be moving this Court to compel, and the Government noted its opposition, meaning the Government did not agree with Defendants that the redactions should be lifted.

The Government agrees completely that under the Jencks Act, Rule 26.2, and cases applying them, the Court is the final word on redactions of Jencks material based on an in camera inspection, and that the Government cannot unilaterally withhold Jencks material through redactions (or any other means) in the face of a defense objection. Indeed, the Jencks Act and Rule 26.2(c) dictate that if the Government claims redactions are made based on privilege or relevance, as here, this Court must order production of such materials in camera, and inspect them and determine if the redactions are justified.

However, for some reason, Defendants' Motion does not merely imply, but directly states (even hyperbolically) that the Government is somehow seeking to avoid this Court's review of redactions to the Jencks material it provided.  This makes no sense at all.  Even before producing it, the Government alerted Mr. Waserstein's counsel that it would produce Jencks in redacted form, which defense counsel made clear would result in an objection, and that judicial review would be sought.  Thus, the Government fully expected the defense to make a motion to un-redact this Jencks material, and knew from the outset that this issue would be teed up for the Court to make the final decision, following an in camera review.  Any suggestion that the Government tried to unilaterally withhold material and/or avoid this Court's review, or has not been fully transparent in its approach to redacting Jencks, is belied by the Government's early production of the majority of Jencks material, consistent communication with defense counsel regarding the redactions both before and after production, and both parties making their disagreements crystal clear.  Thus, earlier this

morning, the Government provided this Court via e-mail with the unredacted <u>Jencks</u> production

and the redacted production sent to counsel for the Defendants, so that this Court can conduct an

<u>in camera</u> review.

## **LEGAL STANDARD**

This case is currently set for a preliminary hearing as to certain defendants on October 28,

2020.  The purpose of the preliminary hearing is to determine whether there is probable cause to

believe that the Defendants committed the charged offense(s). <u>See</u> Fed. R. Crim. P. 5.1(e).[5]

Probable cause is not a high bar and requires merely a "fair probability that the defendant

committed the alleged offense." <u>United States v. Perez</u>, 17 F. Supp. 3d 586, 593 (S.D. Tex. 2014);

<u>see also</u> <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1257 (11th Cir. 2010) (stating with regard to an

arrest warrant, "'[p]robable cause' means 'facts and circumstances sufficient to warrant a prudent

man in believing that the suspect had committed ... an offense.'" (quoting <u>Gerstein v. Pugh</u>, 420

U.S. 103, 111 (1975)).  In addition, reasonable inferences by law enforcement officers can support

a probable cause finding.  <u>See</u>, e.g., <u>United States v. $242,484.00</u>, 389 F.3d 1149, 1160 (11th Cir.

2004) (<u>en banc</u>) (stating that probable cause "is a "reasonable ground for belief of guilt, supported

by less than prima facie proof but more than mere suspicion," and stressing that "[a]lthough we

must decide the legal issue of whether probable cause exists ourselves, we do give weight to the

inferences that law enforcement agents draw from the facts").

The Court's role at the preliminary hearing is not to determine the defendant's guilt or

innocence, make credibility determinations, or even to weigh competing versions of events

---

[5] "[T]he sole objective of a preliminary hearing is to determine whether there is probable cause to believe that the accused has committed an offense[.]"  <u>Coleman v. Burnett</u>, 477 F.2d 1187, 1198 (D.C. Cir. 1973). Discovery and cross-examination are limited because the purpose of the hearing is limited. <u>Id</u>.

presented by the Government and the defense.  See Perez, 17 F. Supp. 3d at 594.[6]  Therefore, in

deciding whether probable cause exists, "all reasonable inferences are to be drawn in favor of the

government."  Perez, 17 F. Supp. 3d at 594.[7]  And while not exactly on point, analogous law in

this Circuit states that when a defendant moves to dismiss an indictment, the grand jury's

allegations "are viewed in the light most favorable to the government."  United States v.

Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987).

    In this preliminary hearing, the Government intends to call FBI SA Alberto Bhoge, and

therefore the Government is obligated to produce Jencks materials for SA Alberto Bhoge in

advance of the preliminary hearing at which he is expected to testify.  See 18 U.S.C. § 3500; Fed.

R. Crim. P. 26.2(a).  The Court must inspect in camera any witness statement that the Government

claims is privileged or does not relate to the subject matter of SA Bhoge's testimony.  Fed. R.

Crim. P. 26.2(c).

---

[6] "[I]t is generally inappropriate for the magistrate judge to make credibility determinations, which fall
within the province of the jury as the trier of fact.  Nonetheless, the magistrate judge may still make a
finding of no probable cause by relying on clear-cut proof of limited scope that negates the government's
evidence."  Id.  See also 1 Charles Alan Wright, et al., Federal Practice & Procedure § 92 (4th ed. 2020)
(noting the court's role in a preliminary hearing is not to determine guilt).

[7] See also Wright, supra, § 92 (same); United States v. Spencer, 2013 WL 2417976, at *1 (S.D. Ohio June
3, 2013) (same) (quoting United States v. Fuentes, 2012 WL 379589, at *2 (S.D. Tex. Jan. 19, 2012));
Matter of Extradition of Ricardo Alberto Martinelli Berrocal, 2017 WL 3776953, at *35 (S.D.F.L. Aug. 31,
2017) (Torres, J.) (in extradition proceeding, rejecting the "weighing of evidence and a selection of one
version over another version," because "this type of evaluation is precisely what this Court cannot do")
(quotation and citation omitted); In re Extradition of Nunez-Garrido, 829 F. Supp. 2d 1277, 1294 (S.D.F.L.
2011) (Goodman, J.) (in extradition proceeding, court should not "credit [defense] testimony over
inconsistent evidence in the record (such as the autopsy)"). As the Eleventh Circuit has recognized,
"[e]xtradition hearings … are in the nature of a preliminary hearing." Kasternova v. United States, 365 F.3d
980, 987 (11th Cir. 2004) (quotation and citation omitted).

## ARGUMENT

**1. The Government Is Not Required To Identify The Witnesses And Individuals Referred To In The Criminal Complaint Affidavit Before A Preliminary Hearing.**

Defendant's Motion asks for the lifting of relabeling in the Jencks material of the names of confidential witnesses and other individuals referred to anonymously in the criminal complaint affidavit.   As noted in its opposition to Defendant Daniel Markovich's motion to compel essentially the same information [D.E. 52], the Government is simply not required to disclose the confidential witnesses nor the individuals that are referred to anonymously in the Complaint, particularly before any preliminary hearing.   Rule 5.1 does not entitle a defendant to know the identity of an informant for a preliminary hearing.   See e.g., United States v. Hart, 526 F.2d 344, 344 (5th Cir. 1976) ("[T]he magistrate was not required to permit Hart to elicit from the government witness, by cross-examination, the identity of the informer.").[8]  Supplying the names of such witnesses in the Jencks material would necessarily reveal these witnesses' identities, which the Government declines to do at this time.

SA Bhoge's testimony at the preliminary hearing will consist, in large part, of his summary of what underlying witnesses told him or other law enforcement officers.   Those underlying witnesses are identified as Confidential Witness ("CW") 1, 2, 3, etc. in the Complaint affidavit, and SA Bhoge will refer to these individuals as CW 1, 2, 3, etc. in his testimony.  Consistent with

---

[8] The Government enjoys a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law" to law enforcement officers.  Roviaro v. United States, 353 U.S. 53, 59 (1957). In determining whether nondisclosure is appropriate, the Court must consider three factors:  "(1) the extent of the informant's participation in the criminal activity; (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant; and (3) the government's interest in nondisclosure." United States v. Flores, 572 F.3d 1254, 1265 (11th Cir. 2009) (per curiam) (quotation marks omitted).  Here, a review of the affidavit supporting the complaint shows that: (1) many of the anonymous individuals did not directly participate in the activity described in the affidavit; (2) many of the individuals had a very tenuous relationship with the Defendants; and, most importantly, (3) the United States must protect their identity in order to safeguard sensitive information that may be relevant to ongoing, open investigations, including this one.

this, where CWs or patients identified in the Complaint affidavit are identified in the 302 reports, the Government has relabeled the witness names to correspond with their anonymization in the Complaint affidavit.  Thus, the redactions in the 302s are, in the vast majority of cases, re-labeling people and entities to keep them anonymous.  Only in case of irrelevance are sections of a 302 completely redacted.  The relabeling of witnesses in the 302s therefore provides Defendants with all they need to effectively cross-examine SA Bhoge on his prior statements.

The Defendants' purported basis for needing the names of the Government's confidential witnesses is not that the 302s are somehow indecipherable as redacted, or even that names of people and places are somehow SA Bhoge's statements, but instead that, at the preliminary hearing, "SA Bhoge will be testifying *en masse* to whatever was told to him or any other law enforcement officer," and therefore, the Government can "avoid sending *Jencks* or *Giglio* for each of these witnesses on which SA Bhoge will be relying."  [D.E. 53, at 4-5.]  But this contention fails.  First, SA Bhoge will adopt the complaint affidavit as his testimony, which summarizes allegations and statements by witnesses, experts, and consultants.  And of course SA Bhoge will speak collectively for the investigation team.  Further, this is entirely consistent with the nature of preliminary hearings and the Government's obligations at this stage.  This is a preliminary hearing to determine probable cause for the charges, not a trial to assess guilt.  It is well-recognized that, in a preliminary hearing, "the government will attempt to meet its burden by summarizing the evidence against the accused, including the substance of any witness statements, through the testimony of a case agent or investigator."  Perez, 17 F. Supp. 3d at 594.  This does not, however, create an obligation for the Government to produce Giglio information on the underlying witnesses

whose statements will be summarized in SA Bhoge's testimony, nor does it obligate the Government to disclose the identities of confidential witnesses.[9] <u>Hart</u>, 526 F.2d at 344.

And crucially, the Government notes that it <u>did</u> make clear in the Complaint affidavit certain potential <u>Giglio</u> information for confidential witnesses, including disclosing that Cooperating Defendant 1 ("CD1") was charged with patient brokering at the state level and has not yet been convicted (Compl., D.E. 1, ¶ 68(n)), and that CW2 may have criminal exposure for supplying drugs and/or alcohol to patients, (<u>id.</u>, ¶ 95(a), n.6).

Accordingly, Defendants' motion to compel such information must fail.

**2. Other Treatment Centers and Individuals Not Related To Compass Detox and WAR Is Not <u>Jencks</u> Material Under Rule 26.2.**

Fed. R. Crim. P. 26.2 applies in a preliminary hearing. Rule 26.2(a) requires that the Government provide statements "relat[ing] to the subject matter of the testimony[.]" The "subject matter of the testimony" of SA Bhoge will focus on Compass Detox, WAR, and the Defendants' conduct and knowledge. Other treatment centers will not be discussed. Therefore, redactions of material unrelated to the case against the operators and agents of Compass Detox and WAR, necessarily, have no bearing on the "subject matter of the testimony," because such redacted material does not, to the undersigned's knowledge, "relate" to any Defendants' conduct outlined in the affidavit supporting the criminal complaint. Further, besides being irrelevant, to the extent that this redacted material relates to other entities, conduct, and/or investigations, lifting such

---

[9] <u>See</u>, <u>e.g.</u>, <u>Perez</u>, 17 F. Supp. 3d at 594 (At the preliminary hearing, "it is generally inappropriate for the magistrate judge to make credibility determinations … ."); <u>see</u> <u>also</u> <u>Matter of Extradition of Ricardo Alberto Martinelli Berrocal</u>, 2017 WL 3776953, at *9 ("[A]n extraditee is also not permitted to introduce evidence that seeks to impeach the credibility of the demanding country's witnesses" at an extradition hearing."); <u>United States v. Gilbert</u>, 198 F.3d 1293, 1304 (11th Cir. 1999) ("It is settled law that the prosecution is not required to include exculpatory evidence in its presentation to the grand jury.").

redactions (including providing even the mere identity of the witness or the name of a particular treatment center) could compromise other ongoing federal and state investigations.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Compel should be denied in its entirety.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

DANIEL KAHN, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:     /s/ *James V. Hayes*
JAMES V. HAYES
Senior Litigation Counsel
FL Special Bar No. A5501717
JAMIE DE BOER
Trial Attorney
FL Special Bar No. A5502601
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C.  20005
Phone:  (202) 774-4276
Email: James.Hayes@usdoj.gov
Email: Jamie.deBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James V. Hayes*